IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. RICE

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
MARK E. RICE, APPELLANT.

Filed March 4, 2014.    No. A-13-414.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, Scott C. Sladek, and Joy M. Suder for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

IRWIN, MOORE, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Mark E. Rice appeals his convictions and sentences for voluntary manslaughter, use of a weapon (not a gun), and possession of a weapon (not a gun). On appeal, Rice challenges the district court's not allowing him to question police officers about all of the statements he made at the time of his arrest and the sentences imposed by the district court. Because Rice testified to all of the statements he asserts the district court erroneously kept out and because the sentences imposed were not an abuse of discretion, we find no merit to this appeal and we affirm.

## II. BACKGROUND

During the early morning hours of March 4, 2012, Rice fatally stabbed a man at one of his neighbor's houses. When law enforcement officers arrived on the scene, witnesses directed them to Rice's house to locate a suspect. When officers arrived at Rice's house, he was called out at gunpoint. Rice came out of his house dabbing his forehead with a white napkin and with a

small scratch on the side of his head. Rice appeared to have been drinking due to the odor of alcohol, and he appeared to be slightly disoriented.

The State called several of the responding officers. An Officer Schrage testified that when he arrived at Rice's house, he heard Rice state, "I know I'm going to jail." Schrage testified that he did not know if the statement was in response to any question or was merely volunteered by Rice.

An Officer Glassman testified that when Rice was taken into custody, he was questioned about the location of a possible weapon and Rice informed the officers "the knife [was] downstairs." On cross-examination, Rice's counsel attempted to question Glassman about other statements that Rice may have made. The State objected that other statements would be hearsay, and a lengthy sidebar discussion took place. Rice's counsel made an offer of proof that if he was allowed to question Glassman, Glassman would testify that Rice had been asked if anyone else had been hurt, that Rice responded there might have been but Rice was only defending himself, and that Rice advised Glassman "that ain't no man going to call me a nigger and I was just defending myself."

Rice's counsel argued that he should be allowed to question Glassman about the additional statements made by Rice as a matter of "completeness," because the State had opened the door and asked about some of the statements made and it would not be fair to allow the jury to hear that Rice indicated he knew he was going to jail, but not allow the jury to hear that Rice had also indicated he was defending himself. The State maintained that the statements allowed, about going to jail and the location of the knife, were admissions but that the additional statements were hearsay and admission of them was not necessary under the rule of completeness. The court ultimately sustained the State's objection and did not allow Rice's counsel to question Glassman about the additional statements.

An Officer Snethen testified that Rice directed officers to the basement and told them that "the knife was down there when [Snethen] asked him." On cross-examination, Rice's counsel established that Snethen took notes of any statements he heard Rice make. Rice's counsel made the same offer of proof concerning what Snethen would testify to concerning statements made by Rice. Rice's counsel again argued that the additional statements about Rice defending himself, being called a derogatory name, and indicating that he was attacked were all part of the same conversation with law enforcement and were admissible under the rule of completeness. The State again asserted that the admitted statements were admissions and that the other statements were "clearly hearsay" and not admissible as part of the same context.

Rice's counsel argued that the additional statements were necessary to provide completeness and context for the jury because Rice said he knew he was going to jail, but "[t]hat isn't all he said. He said, I know I'm going to jail, he attacked me, I was defending myself." Rice's counsel argued it was misleading to the jury to only allow the first portion of the statements. The State argued that the statements about being attacked and defending himself had "absolutely nothing to do with the I'm going to jail" statement. The State argued, "You wouldn't say I'm going to jail as an admission I done something wrong if you really believed it's because someone called you a name or if someone attacked you, because then you wouldn't be going to jail." The State argued that the statements were not related and that if Rice wanted to present them as part of his defense, "[h]e [could] get up on the stand and certainly say that." The court

ultimately refused to allow Rice's counsel to ask Snethen about the statements, concluding that "any potential for misleading the jury has been cured and can be cured by argument."

There was also evidence presented concerning what had actually occurred during the incident in which the victim was fatally stabbed. The owner of the residence where the incident occurred testified about the incident. On cross-examination, she testified that the victim called Rice "a mother fucking nigger . . . [m]otherfuckers, niggers, bitch ass, all kinds of stuff." She also denied that the victim advanced toward Rice prior to being stabbed by Rice. Another witness who was in the residence at the time of the incident also testified about the incident, and he denied seeing anyone attack Rice. He testified that he did not hear the victim call Rice any names.

Rice testified in his own defense. He described to the jury his version of the events leading to the stabbing. He testified that the victim called him "nigger" and that when Rice asked the victim what he had said, the victim "just bust[ed] [Rice] in [his] eye." Rice testified that the victim struck him and that when Rice attempted to push the victim backward, the owner of the residence and the other witness who was present began "grabbing [Rice and] holding [him]." He testified that he had a knife in his pocket and that it had fallen on the ground. He testified that he attempted to leave, but that he attempted to pick up his knife before leaving. He testified that as he attempted to pick up his knife, he turned and the victim was "starting to come at [him] again" and the others were "grabbing" him again. He testified that the victim "was trying to hurt [him,] really trying to hurt [him]."

Rice testified that when law enforcement officers arrived at his residence, he went outside, stood on the porch, and "said, he, man, he tried to fuck me up, man, he was really trying to fuck me up." He testified that he told the officers that the victim "attacked" him and that he said "I know I'm going to jail . . . because that's what - not to be mean or nothing, but they do." On cross-examination, the State asked Rice if the victim said, "fuck you nigger" to him, and Rice acknowledged that the victim had said that.

Rice was ultimately charged with second degree murder, use of a weapon (not a gun) in the commission of a felony, and possession of a weapon (not a gun) by a prohibited person. The jury returned verdicts finding Rice guilty of voluntary manslaughter, use of a weapon (not a gun), and possession of a weapon (not a gun). The court sentenced Rice to a term of 20 to 20 years' imprisonment on the manslaughter conviction, 10 to 20 years' imprisonment on the use conviction, and 10 to 10 years' imprisonment on the possession conviction. The court ordered all sentences to be served consecutively. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, Rice has assigned three errors. First, Rice asserts that the district court "abused its discretion by not allowing witnesses of all of the comments made by [him] upon his arrest." Second, he asserts that the court imposed excessive sentences. Finally, he asserts that the court erred in "imposing the same term of years on the minimum and maximum" terms of the sentences imposed for the manslaughter and possession of a weapon convictions.

## IV. ANALYSIS

### 1. RICE'S STATEMENTS TO LAW ENFORCEMENT OFFICERS

Rice first asserts that the district court erred in "not allowing the complete statements of [Rice] to arresting officers [to] be offered into evidence." Brief for appellant at 10. Rice argues that his additional statements to officers were admissible under Neb. Rev. Stat. § 27-106 (Reissue 2008), the rule of completeness. Because the record indicates that Rice himself testified about all of the statements he sought to have introduced, we conclude that there was no reversible error by the district court. We find no merit to this assignment of error.

Under § 27-106:

(1) When part of an act, declaration, conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other. . . . When a detached act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood, or to explain the same, may also be given in evidence.

(2) The judge may in his discretion either require the party thus introducing part of a total communication to introduce at that time such other parts as ought in fairness to be considered contemporaneously with it, or may permit another party to do so at that time.

Because § 27-106 is concerned with the danger of admitting a statement out of context, additional evidence is admissible only if it qualifies or explains the previous testimony. *State v. Schrein*, 244 Neb. 136, 504 N.W.2d 827 (1993). Section 27-106 is included in article 1, the "General Provisions" section, of the Nebraska Evidence Rules. As explained by the drafters' comment, the predecessor to § 27-106 was applied repeatedly to admit explaining matter that otherwise might not have been admissible as hearsay, opinion, or the like. *State v. Schrein, supra*. Furthermore, although § 27-106 differs from Fed. R. Evid. 106, the drafters of the Nebraska rule believed that there was no significant difference between the rules. *State v. Schrein, supra*.

In *State v. Schrein, supra*, the Nebraska Supreme Court noted that under the federal rule, the trial court must first determine whether the additional evidence which the proponent seeks to admit is relevant to the issues in the case. The court also recognized that the test under Fed. R. Evid. 106 is a conjunctive one, and once relevance has been established, the trial court must then ask (1) does the proffered evidence explain the admitted evidence, (2) does it place the admitted evidence in context, (3) will admitting it avoid misleading the trier of fact, and (4) will admitting it ensure a fair and impartial understanding of all the evidence. See *State v. Schrein, supra*.

In the present case, we recognize that it is arguable that the proffered additional statements made by Rice to law enforcement officers could have been admissible under § 27-106. The State's primary argument at trial seemed to be that the statements were hearsay. Such an assertion is immaterial, however, as the very basis for § 27-106 is that it is a way to gain admission of evidence that would otherwise be inadmissible. The fact that the statements may or may not have been hearsay has no bearing on whether they were relevant and otherwise satisfied the test for admissibility under the rule of completeness.

It is arguable that the statements generally satisfy the test set forth by the Nebraska Supreme Court in *State v. Schrein, supra*. The State adduced evidence that Rice "admitted" to some kind of wrongdoing by making statements that he knew he was going to jail and by telling law enforcement officers where to locate the knife that was used in the stabbing. The additionally proffered statements concerned Rice's assertion to law enforcement that the victim had attacked him, that the victim had called him a derogatory name, and that he was defending himself from the victim's attack. The proffered additional statements arguably would have provided context for any kind of admission to having stabbed the victim, as they arguably indicate that although Rice was acknowledging having stabbed the victim, he did so in self-defense. Rice's defense at trial was not to dispute having stabbed the victim, but to assert that it was self-defense.

Nonetheless, we need not specifically resolve the question of whether the district court abused its discretion in excluding the additionally proffered statements. Even assuming that the statements were admissible and even assuming that we could conclude that refusal to admit them constituted an abuse of discretion, any error in this case would ultimately have been harmless error in light of other testimony received without objection.

In *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006), the Nebraska Supreme Court was presented with a case wherein the defendant had been charged with second degree murder and child abuse resulting in the death of a 2-year-old child. The defendant's wife was interviewed by law enforcement and, during a 6½-hour interview, gave inconsistent statements. The State adduced evidence of some of her statements, but not all of them. The defendant attempted to introduce the entirety of the interview under the rule of completeness, but the trial court refused on the basis of Neb. Rev. Stat. § 27-403 (Reissue 2008).

On appeal, the Supreme Court emphasized that both the State and the defendant had adduced evidence of the inconsistent statements and that the jury was already aware of the evidence that the defendant was asserting had been wrongly excluded. The court also emphasized that the defendant had not taken the opportunity to present additional evidence about specific statements and concluded that the finding under § 27-403 was not erroneous.

Although the present case is slightly different, we find the underlying rationale of the Supreme Court in *State v. Molina, supra*, to be persuasive here. In the present case, there was no assertion under § 27-403. However, Rice testified in his own behalf. Unlike the defendant in *State v. Molina*, Rice actually did take the opportunity to testify and present evidence about the specific statements that he wanted introduced. Like in *State v. Molina*, there was additional evidence adduced to the jury concerning the statements that Rice asserts were improperly excluded and the jury was aware of them.

A review of the record reveals that Rice testified in his own behalf and that he testified with regard to each of the statements he asserts were erroneously excluded. He was able to present his defense, and the jury was aware of each of the statements he is complaining were excluded. He also elicited testimony from the owner of the residence confirming that the victim had called him a racial epithet, and he was able to cross-examine the owner of the residence and another witness about the events and whether the victim had attacked him. He presented evidence, both through his own testimony and through the law enforcement officers who testified, about having a scratch on his face and using a napkin to wipe or dab blood off his face.

As such, even assuming that the additional statements were admissible under the rule of completeness, and even assuming we could go so far as to find the district court's exclusion of them to be an abuse of discretion, any such error would be harmless. Rice himself ultimately testified to each of the statements he asserts were erroneously excluded, and he was able to present his self-defense theory; the jury simply did not accept Rice's defense. This assigned error is without merit.

## 2. SENTENCES

### (a) Assertion of Excessive Sentences

Rice next asserts that the district court erred in imposing excessive sentences. He argues that the total sentence imposed, 40 to 50 years' imprisonment, was an abuse of discretion. The sentences imposed were within statutory limits, and there is no abuse of discretion apparent in this case. We find no merit to Rice's assertion to the contrary.

Voluntary manslaughter is a Class III felony offense. Neb. Rev. Stat. § 28-305 (Reissue 2008). Use of a deadly weapon (not a firearm) to commit a felony is a Class II felony offense. Neb. Rev. Stat. § 28-1205(1)(b) (Cum. Supp. 2012). Possession of a deadly weapon (not a firearm) by a prohibited person is a Class III felony offense. Neb. Rev. Stat. § 28-1206(3)(a) (Cum. Supp. 2012). The two Class III felony offenses were punishable by sentences of 1 to 20 years' imprisonment, a fine of $25,000, or both. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). The Class II felony offense was punishable by a sentence of 1 to 50 years' imprisonment. § 28-105. The sentences imposed were within these statutory guidelines.

Sentences within statutory limits will be disturbed on appeal only if the sentences complained of were an abuse of judicial discretion. *State v. Podrazo*, 21 Neb. App. 489, 840 N.W.2d 898 (2013). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

When imposing a sentence, a sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *Id.* In imposing a sentence, the sentencing court is not limited to any mathematically applied set of factors. *Id.* The appropriateness of a sentence is necessarily a subjective judgment and includes the sentencing judge's observation of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. *Id.*

Rice asserts that although the sentences imposed were well within the statutory guidelines, they constituted an abuse of discretion because of his age, the alleged insignificance of his prior record, the fact that he was employed at the time of the offense, and the fact that he presented several letters of support speaking to "influence, love, and respect within his family." None of these demonstrates an abuse of discretion, particularly in light of the nature of the offense in this case.

Rice's presentence investigation report is approximately 260 pages in length. His criminal record includes convictions for carrying a concealed weapon, felony sexual assault of a child, obstruction, disorderly conduct, driving under the influence on four occasions, resisting

arrest, and driving during revocation on multiple occasions. Rice asserts on appeal that "although [the sexual assault conviction was] violent in nature in that it was a sexual assault conviction, the facts were that [he] had sexual intercourse with an individual who was younger than she was believed to be." The presentence investigation report indicates that Rice believed the female was 24 years of age when, in fact, she was only 14 years of age. In addition, the LS/CMI assessment in the presentence investigation report suggested that Rice is a "very high risk" to reoffend.

The offense in this case was a fatal stabbing, with a knife, by a person who was at the time prohibited from possessing a weapon. The sentences imposed were well within the statutory limits, and Rice has not demonstrated that they were an abuse of discretion. This assigned error is meritless.

### (b) Maximum and Minimum Terms of Sentences

Finally, Rice asserts that the district court erred in imposing the same term as the maximum and minimum portions of the sentences imposed for manslaughter and possession of a weapon. He acknowledges that the Nebraska Supreme Court has specifically rejected this assertion, but urges that the Supreme Court's "interpretation is inconsistent with" Nebraska statutes and "applicable parole and good time laws." Brief for appellant at 20-21. In light of the Supreme Court's having already rejected this assertion in prior cases, we find no merit to this assignment of error.

The specific assertion made by Rice here, that by imposing a minimum sentence that is equivalent to the maximum sentence the district court has in effect failed to assess a minimum sentence, has already been addressed and rejected by the Nebraska Supreme Court. See *State v. Cook*, 251 Neb. 781, 559 N.W.2d 471 (1997). In that case, the Supreme Court specifically held that "[t]he Nebraska sentencing statutes do not require that the minimum sentence be for a different term than the maximum sentence." *Id.* at 782, 559 N.W.2d at 472.

Moreover, we note that to the extent part of Rice's assertion on appeal is that imposing the same term as both the maximum and the minimum terms results in him not ever being eligible for parole, the assertion is not true on the facts of this case. Rice was convicted of and sentenced on three separate felony offenses, with consecutive sentences imposed for all three offenses. The indeterminate sentences on counts 1 and 3 did include the same terms for both the minimum and the maximum, but the indeterminate sentence for count 2 did not. The cumulative sentence imposed was 40 to 50 years' imprisonment, and the cumulative indeterminate sentence does not include the same minimum and maximum terms.

In light of the Supreme Court's having already resolved the issue Rice addresses, we are not at liberty to reach a contrary finding. This assigned error is meritless.

### V. CONCLUSION

We find no merit to Rice's assertions on appeal. Even assuming the district court abused its discretion in not allowing Rice's counsel to question law enforcement officers about Rice's additional statements, Rice himself testified to all of the excluded statements and presented his defense to the jury. The sentences imposed were not excessive, nor was there an error in

imposing indeterminate sentences where both the maximum and minimum terms were the same. We affirm.

AFFIRMED.